735 So.2d 687 (1999)
STATE of Louisiana
v.
John HOLMES.
No. 98-KA-490.
Court of Appeal of Louisiana, Fifth Circuit.
March 10, 1999.
*689 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Assistant District Attorneys, Gretna, Louisiana, Counsel for plaintiff-appellee.
Gwendolyn Kay Brown, Louisiana Appellate Project, Baton Rouge, Louisiana, Counsel for defendant-appellant.
Court Composed of Judges H. CHARLES GAUDIN, MARION F. EDWARDS and SUSAN M. CHEHARDY.
GAUDIN, Judge.
John Holmes was convicted by a jury of three counts of assault by drive-by shooting (LSA-R.S.14:37.1) and one count of unauthorized entry of an inhabited dwelling (LSA-R.S.14:62.3). For each of the three R.S. 14:37.1 convictions, Holmes was sentenced to five years at hard labor, to be served concurrently, and three years at hard labor for unauthorized entry, to be served after the other sentences. We affirm.
Evidence at trial convinced the Jefferson Parish jury that on April 12, 1997, Holmes committed an unauthorized entry into the residence of his ex-wife, Zina Holmes; and that later on the same day he fired a gun at a vehicle containing Zina Holmes, her 10-month-old son and another person, Bobby Jones. Holmes denied the charges, saying he was elsewhere at the time of the forced entry and shooting.
On appeal, Holmes contends that the trial court erred:
(1) in denying his challenge for cause against prospective juror Linda Provance,
(2) in denying his motion for post-verdict judgment of acquittal,
(3) in denying his motion for a new trial,
(4) in convicting him on insufficient evidence,
(5) in imposing an excessive sentences, and
(6) in denying his motion to reconsider the sentences.

ASSIGNMENT NO. 1
Holmes argues that juror Linda Provance was biased and that the trial judge should have granted his motion to excuse her for cause.
Ms. Provance expressed concern because she had been a victim of domestic abuse by her former husband "about 22 years ago" and also because she "would be curious" about why Holmes might refuse to testify in his own behalf. However, further questioning, particularly by the trial judge, indicated that Ms. Provance could and would be fair and impartial.
A trial judge has broad discretion in deciding whether a prospective juror should or should not be excused for cause. The Louisiana Supreme Court, in State v. Lee, 637 So.2d 102 (La.1994), stated at page 108:
"... a trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on review unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Bourque, 622 So.2d 198, 226 (La.1993); State v. Jones, 474 So.2d 919, 926 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986) ...
"This is necessarily so because the trial judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning by the parties' attorneys. Such expressions and intonations are not readily apparent at the appellate level where review is based on a cold record. Furthermore, to the extent he or she believes it is *690 necessary or desirable to do so, the trial judge has the benefit of the ability to directly participate in the examination of the members of the jury venire. As such, we are reluctant to reverse a ruling of the trial judge on a challenge for cause where it does not appear from a review of the record as a whole that the trial judge has somehow abused his discretion."
The instant record shows that five jurors were excused for cause, including at least two who were excused because they said they would be biased if Holmes did not testify.
Here the voir dire as a whole was fair and unprejudicial. We see no abuse of discretion.

ASSIGNMENTS 2, 3 AND 4
In these assignments of error, Holmes challenges the sufficiency of evidence against him.
The standard for reviewing the sufficiency of evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), adopted by Louisiana in State v. Abercrombie, 375 So.2d 1170 (La.1979), cert. denied, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). The reviewing court must decide, after viewing the direct and circumstantial evidence in the light most favorable to the prosecution, whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt.
Holmes was charged with entering an inhabited dwelling without authorization (R.S. 14:62.3) and in drive-by shooting with a firearm using a motor vehicle to facilitate the assault (R.S.14:37.1).
Zina Holmes testified that in the early morning hours of April 12, 1997, she heard noises outside of her home. She called the police, and Deputy James Wine of the Jefferson Parish Sheriff's Office responded. Deputy Wine said that he arrived at Zina Holmes' residence at approximately two a.m. and checked the premises for signs of an intruder but found none.
Zina Holmes said that later that morning, she saw the defendant in the hallway of her home. She ordered him to leave, and she retrieved a pistol from the closet. After some discussion, the defendant eventually left. Zina Holmes testified that when he reached the sidewalk, Holmes pointed something at her, and she then shot her gun into the air. Thereafter, the defendant left. Zina Holmes again called the police, and both Deputy Wine and Deputy Brad Bonnette came.
Deputy Bonnette testified that he discovered some louvers missing from the attic vent on the roof and noticed a wooden board lying on the side of the house. Based on his investigation, Deputy Bonnette testified that he determined that an intruder had entered the house from the attic panel. Deputy Bonnette said that Zina Holmes told him that her ex-husband had broken into her home.
At approximately nine p.m. the same day, Bobby Jones, Zina Holmes' friend, drove her and her 10 month-old son to her sister's apartment. When they were three to four blocks away from her home, Zina Holmes heard gunshots. She looked around and saw the same brown truck that her former husband had been driving the previous night. Zina Holmes stated that she saw a hand sticking out of the window, but did not actually see a face at that time. However, she and Jones testified that they saw the defendant's face later when he pulled up next to them in the brown truck. Jones saw an officer at an intersection, and pulled alongside of him and told the officer about the gunfire.
Jones and Zina Holmes continued on their way to her sister's home on Destrehan Avenue. They said that when they parked the car in the driveway, they heard gunfire. Zina Holmes and Jones both testified that they looked behind them and saw the defendant driving slowly behind them. Zina Holmes testified that she saw the defendant shooting the gun out of the passenger side window of the *691 truck. Jones said that he looked around and saw fire coming from the gun, which was pointed straight at his car. Both Zina Holmes and Jones said that they got down on the floor of the car, and that they were not hit by the bullets.
Deputy Gabriel McFarlain testified that he responded to the call and investigated the incident. According to the deputy's testimony, the incident took place between 9:20 and 10 p.m. He found a bullet hole in the bumper of Jones' car, and also found two projectiles on the ground. Jones testified that he also saw the bullet hole, and that it was not there before that night. Crime scene technician Daniel Duffourc testified that he photographed the scene and collected evidence, including the two projectiles found underneath Jones' vehicle. Louise Waltzer, an expert in forensic firearm examination, identified the projectiles as .38 caliber bullets fired from the same weapon.
Holmes attempted to establish an alibi defense. He presented the testimony of several witnesses but apparently the jurors did not find this testimony believable. It is not the function of the reviewing court to assess the credibility of witnesses or to re-weigh evidence. See State v. Bordenave, 678 So.2d 19 (La.1996), and many other cases with similar holdings.
These assignments of error are without substance. If found credible, the testimony of Zina Holmes, Jones and the police officers were more than sufficient to convict Holmes.

ASSIGNMENTS 5 AND 6
Holmes contends that while the sentencing judge considered aggravating factors, he overlooked mitigating factors such as: (1) he (Holmes) had no prior serious involvement with law enforcement, (2) nobody was injured and there was no property loss, (3) he is the father of three children, (4) this was a domestic case and it included allegations by an ex-wife who had previously told lies about him and (5) these crimes are not "the worst in this class of offenses" and he personally cannot be characterized as "the worst in this class of offenders."
Before passing sentence, the trial judge said:
"The Court takes notice that the defendant has been convicted of four felonies involving the same parties, one of whom is a minor child. The Court is of the opinion that a suspended sentence is not warranted in this case. That if the Court were to suspend the sentence and place the defendant on probation, that there is a likelihood an additional crime would be committed. The Court further takes notice that pursuant to the requirements of Revised Statute 37.1 that the sentence imposed is without benefit of suspension of sentence. Therefore, the Court cannot suspend the sentence which it would impose in this matter in connection with those charges.
"The Court further is of the opinion that the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution. That a lessor sentence which the Court would impose would depreciate the seriousness of the sentence which the Court imposes.
"The Court further takes notice that the crime committed that the offender knew or should have known that one of the victims of the offense was particularly vulnerable or incapable or resisting or protecting herself due to the extreme youth of that child, that is the baby which was in the car when the drive-by shooting took place.
"Further, the offender knowingly created a risk of death or great bodily harm to more than one person. The Court takes notice that the offender used threats of acts of violence and did in fact commit violence in connection with the offense. That the offender used a dangerous weapon in the commission of the offense. That the offense involved multiple victims or incidents for which a *692 separate sentence could be imposed to run consecutively to each if the Court so chose. That the offender foreseeably endangered human life not only within the vehicle but the lives with persons associated in that neighborhood. The incident was committed in a residential section by discharging a firearm during the commission of the offense at issue which the defendant appears before the Court."
Subsequent to sentencing, Holmes filed a Motion to Reconsider Sentence. In denying this motion, the trial judge stated:
"The Court has reviewed the motion by counsel. Indeed, I am familiar with the facts of this matter as well as the history of the defendant. Let me say that the Court does not consider the sentence which it imposed to be excessive. I will tell you, Ms. Vaughn, that subsequent to the sentencing that you were aware I received a pre-sentence investigation report even though I had ordered that it be canceled inasmuch as it was not prepared at the time of sentencing I think some ten days later or so. In any event, after the sentencing I received the pre-sentence and I've allowed you to look at it and to tell you the truth, had I had that before I sentenced him I would have imposed a more harsher sentence.
"Pretermitting that particular document, I believe actually I'm probably on the low side with respect to the sentence in this case. I took into consideration some mitigating factors and as a result of that reduced the sentence down which I imposed, therefore I'm going to deny your motion."
Because the record supports the trial judge's reasons for the sentence imposed and for his denial of the motion to reconsider, we see no abuse of his sentencing discretion.

ERROR PATENT
The record was reviewed for errors patent, according to LSA-C.Cr.P.art. 920. There is an error in the defendant's commitment. While the transcript reflects that the trial judge stated that Holmes' sentence on the assault by drive-by shooting convictions were to be without suspension of sentence as required by LSA-R.S. 14:37.1, the commitment reflects that the sentences are to be served without benefit of suspension of sentence or parole. Where there is a discrepancy between the minute entry and the transcript, the transcript should prevail. See State v. Lynch, 441 So.2d 732, 734 (La.1983). We therefore order that the commitment be amended to delete that part of the sentence denying parole eligibility.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED ONLY FOR AMENDMENT TO COMMITMENT FORM.