749 So.2d 806 (1999)
STATE of Louisiana
v.
Noel E. DAUZART.
No. 99-KA-730.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 1999.
*807 Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry M. Boudreaux, George C. Wallace, Jr., Joe Roberts, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee.
Margaret S. Sollars, Thibodaux, Louisiana, Attorney for Appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and MARION F. EDWARDS.
EDWARDS, Judge.
Defendant/Appellant Noel E. Dauzart appeals the judgment of the trial court finding him guilty of two counts of armed robbery in violation of LSA-R.S. 14:64. Dauzart and his co-defendant, Richard D. Hannon, were apprehended in Esplanade Mall after fleeing the scene of a bank robbery. Dauzart alleges that Hannon forced him at gunpoint to assist in the robbery and escape and that Hannon's self-serving testimony at trial was insufficient to convict him of the crime. For the following reasons, we affirm the judgment of the trial court.
On October 4, 1996, Hannon entered the Metro Bank brandishing a gun and demanded that the tellers hand over all the money in their drawers. A silent alarm *808 was activated during the robbery and the police arrived immediately on the scene.
Officer Oscar Munoz of the Kenner Police Department parked his unit next to a green Maxima parked in the rear of the bank. The vehicle was driven by Dauzart. As Officer Munoz surveyed the scene, Hannon exited the bank and jumped into the rear seat of the vehicle driven by Dauzart. The officer attempted to detain the suspects, but they fled the scene. At no time did the officer see a gun in view, nor did it appear that Dauzart was being threatened by Hannon.
Dauzart and Hannon were chased to the Esplanade Mall. They entered the mall and were spotted by Officer Labarriere. He gave chase to the two suspects, who split up once they entered the mall. Dauzart was apprehended by two other officers, with the assistance of Officer Labarriere. He was in possession of a backpack containing some of the money stolen from the bank. Dauzart resisted arrest and had to be physically manhandled back to the police car and secured within. Hannon was also arrested in the mall in possession of some of the money from the bank and a nine-millimeter revolver.
Two of the tellers from the bank were brought to the Esplanade Mall for identification purposes. They both affirmatively identified Hannon as the perpetrator of the robbery. Officer Munoz identified Dauzart as the driver of the vehicle.
A twelve-person jury was empaneled and the case went to trial on March 18, 1998 before the Honorable Sheldon G. Fernandez of the Twenty-Fourth Judicial District Court. After opening arguments, Hannon changed his plea from not guilty to guilty as part of a plea arrangement to testify against Dauzart. On March 20, 1998, the jury returned a unanimous verdict of guilty as charged against Dauzart on two counts of armed robbery in violation of LSA-R.S. 14:64.
Dauzart filed a motion for new trial alleging that the trial was improperly closed to the public and that the trial court erred by not allowing him to testify in his own defense. The motion was denied by the trial court on April 3, 1998. Dauzart was then sentenced by the trial court to sixty (60) years at hard labor without benefit of probation, parole or suspension of sentence on both counts, to run concurrent. A motion for appeal was filed by Dauzart and subsequently granted by the trial court. The matter is now before this Court for review.

LAW AND ANALYSIS
Dauzart has alleged four assignments of error on appeal. In his first assignment of error, Dauzart alleges that the evidence was insufficient to support his conviction because it was based on unreliable and tainted testimony. In his second assignment of error, Dauzart alleges that the trial court erred by preventing the trial from being fully open to the public. In his third assignment of error, Dauzart alleges that the trial court erred by not allowing the defendant and another witness to testify before the defense had formally rested. In his fourth and final assignment of error, Dauzart alleges that the trial court erred by imposing an unconstitutionally harsh and excessive sentence. These assignments of error are without merit and the judgment of the trial court must be affirmed and remanded with instructions.
In his first assignment of error, Dauzart alleges that the evidence was insufficient to support his conviction because Hannon's testimony was tainted and unreliable. Dauzart alleges that Hannon misled the jury into believing that Dauzart was an accomplice to the bank robbery because Hannon was offered a plea bargain agreement by the State in exchange for his testimony.
The appropriate standard of review for determining the sufficiency of the evidence was set forth in Jackson v. Virginia.[1] In *809 Jackson, the Supreme Court explained that when evaluating the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] The reviewing court must decide, after viewing the direct and circumstantial evidence in the light most favorable to the prosecution, whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt.[3] Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.[4]
Dauzart argues that the State has no proof to support its allegation that he voluntarily participated in the bank robbery other than Hannon's testimony. Dauzart claims that Hannon's plea bargain agreement with the State made his testimony unbelievable since he had a strong motivation to lie. Dauzart also argues that Officer Lynch's testimony was tainted because he denied knowledge of any injury to Dauzart's head, which was refuted by medical records entered into evidence.
At trial, Hannon testified that he was a long time friend of Dauzart and that he only agreed to testify against him when he heard the opening arguments of Dauzart's attorney. As part of his plea bargain, he was promised a sentence of fifty (50) years. Hannon has an extensive criminal record, of which the jury was made aware during his testimony. After being presented with all of the facts, the jury found Hannon's testimony to be credible. This determination will not be disturbed by the Court.
Officer Lynch only testified to the facts and circumstances of Dauzart's arrest in the Esplanade Mall and his testimony was corroborated by Officer Labarriere. His testimony did not have any bearing on whether or not Dauzart aided and abetted Hannon in the commission of the bank robbery. As his testimony did not have any bearing on the robbery itself, this Court cannot find that it tainted the jury's perception of the facts.
Dauzart alleges that the State has only circumstantial evidence to prove his involvement in the robbery. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."[5] The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt.[6]
In the present case, the conviction was based in part on circumstantial evidence. When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[7] While Dauzart did not actually enter the bank during the robbery, the evidence was sufficient to prove that he helped plan the crime and assisted in furthering its completion. Based on the *810 record, there was sufficient evidence to convict Dauzart of armed robbery in violation of LSA-R.S. 14:64. The judgment of the trial court must be affirmed.
In his second assignment of error, Dauzart alleges that the trial court erred by preventing the trial from being fully open to the public. During trial, Dauzart requested that the court recess at 4:45 p.m. each day due to the fact that access to the courthouse by the public was limited after this time. Dauzart alleges that the trial court's denial of this request constitutes prejudicial error.
Dauzart relies on the holding in the United States Supreme Court case of Waller v. Georgia.[8] The Waller court recognized the Sixth Amendment right of an accused to a public trial and that the central aim of a criminal proceeding must be to try the accused fairly.[9] It also recognized that the right to a public trial is not absolute, and that it may give way to other rights or interests, such as the defendant's right to a fair trial or the prosecution's interest in preventing the disclosure of sensitive information.[10] It noted that such circumstances were rare and the balancing of interest must be carefully taken.[11]
The closure policy at the courthouse was adopted for security reasons. In the interest of fairness, the trial judge issued a permanent order allowing Dauzart to advise him regarding any individual who wished to be present after 4:45 p.m. so that accommodations could be made. No such effort was made by Dauzart or by defense counsel. On March 18, 1998, the first day of the trial, court recessed at 4:53 p.m. On March 19, 1998, the jury was excused at 5:50 p.m. and court recessed shortly thereafter at 6:30 p.m. On March 20, 1998, the last day of trial, the jury's verdict was rendered at 2:35 p.m. and court was then recessed.
Dauzart was not deprived of his right to a public trial. He was given every opportunity to notify the trial court if there was anyone who needed to enter the courthouse after 4:45 p.m. on the days in question. The trial court's ruling was not so egregious as to warrant a reversal of the trial court's judgment. The judgment must be affirmed.
In his third assignment of error, Dauzart alleges that the trial court erred by not allowing him and another witness to testify before the defense had formally rested. LSA-C.Cr.P. art. 765(5) provides that "[t]he court in its discretion may permit the introduction of additional evidence prior to argument." As stated in State v. Bush,[12]
"The introduction of evidence after the State's case has been presented and after the defense has rested is in the discretion of the trial judge. When a matter is within the discretion of the trial judge, although that matter is reviewable, the trial judge's ruling will not be disturbed by this Court unless the record clearly indicates an abuse of discretion."
In criminal cases the right to testify in one's own behalf is a carefully protected right.[13] However, Louisiana legislation and jurisprudence have articulated guidelines to maintain an orderly trial while still being fair to the defendant.[14]
After Dauzart's final witness had testified, he asked for and was granted a five-minute recess. Upon returning, the defense rested, subject to the introduction of medical records. After an extensive *811 delay during which time the court determined which portion of the medical records would be submitted to the jury, Dauzart informed the trial court that he intended to take the stand in his own defense. He also informed the trial court that he intended to introduce the testimony of Megan Wood to impeach the testimony of Officer Lynch. The trial judge did not allow Dauzart to present these testimonies, as the defense had already rested its case.
The facts of this case must be differentiated from this Court's opinion in State v. Calloway.[15] In Calloway, the trial judge arbitrarily determined that if the defense witnesses could not testify at a certain time, he would not allow them to testify at all. The Calloway Court correctly concluded that under these circumstances "[t]he defendant was deprived of his defense and a fair trial where the court erroneously excluded defense witness testimony that would have substantially helped the defense."[16]
Dauzart argues that it was an abuse of the trial court's discretion not to allow him to testify since the State was not prejudiced. The trial judge allowed Dauzart adequate time to decide whether he wished to testify on his own behalf. The decision to do so was not made until the very last minute when the defense had already rested. Unlike Calloway, in this case the trial judge's decision was neither arbitrary or capricious, nor would the witness testimony have substantially helped the defense as the weight of the evidence was overwhelmingly against Dauzart. He was not prejudiced by the decision of the trial court. Dauzart has failed to prove that the trial court abused its discretion by not allowing him to re-open his case after resting. Absent such an abuse of discretion, the judgment of the trial court must be affirmed.
In his fourth assignment of error, Dauzart alleges that the trial court erred by imposing an unconstitutionally harsh and excessive sentence. It is first noted that he did not file a motion to reconsider sentence following the imposition of his sentence. LSA-C.Cr.P. art. 881.1 provides that a defendant may file a motion to reconsider sentence within thirty days of sentencing. The article requires that the motion be made orally at the time of sentencing, or in writing, and that it set forth the specific grounds on which the motion is based. The failure to file a motion to reconsider sentence, or to state the specific grounds on which the motion is based, precludes the defendant from raising those grounds on appeal.[17] In State v. Mims, the Louisiana Supreme Court was silent as to whether the failure to comply with article 881.1 precludes even a claim of constitutional excessiveness. In an abundance of caution, we shall consider the issue of whether the sentence was constitutionally excessive.[18]
The Eighth Amendment to the United States Constitution and Article 1 § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.[19] The trial judge has wide discretion in imposing sentences within the statutory limits, and *812 sentences will not be set aside as excessive absent manifest abuse of that broad discretion.[20]
Dauzart argues that he is being treated unfairly because Hannon received a sentence of fifty (50) years whereas he has received a sentence of sixty (60) years. This argument is without merit, because the trial judge must exercise his sentencing discretion to impose sentences graduated according to the individualized circumstances of the offense and of the offender.[21] LSA-R.S. 14:64 B provides:
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.
The trial judge believed that a sixty year sentence was appropriate considering the facts and circumstances of the case. He articulated his reasons at the sentencing hearing and these reasons were well supported in the record. Absent a manifest abuse of discretion, the judgment of the trial court must be affirmed.
The record in this case was reviewed for errors patent.[22] The following errors are presented for review.
At the sentencing hearing, the trial court informed Dauzart that he had "three (3) years from today's date to file post-conviction relief." This notification was incomplete, as LSA-C.Cr.P. art. 930.8 currently provides that a defendant has three years from the day the judgment becomes final in which to file an application for post conviction relief. Moreover, an amendment to article 930.8, effective on August 15, 1999, shortens that prescriptive period. See 1999 La. Acts 1262. The amended article provides, in pertinent part:
A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
* * *
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
The application of the amended prescriptive period in Dauzart's case would not violate ex post facto prohibitions, as the article itself does not relate to an offense or its punishment.[23] The Court must order the district court to send written notice of the amended prescriptive period (along with notification of when the period begins to run) to Dauzart within ten days of the rendering of this opinion, then filing written proof in the record that he received said notice.[24]
In summary, it is the opinion of this Court that the evidence presented at trial was sufficient to support Dauzart's conviction. Dauzart failed to prove that the trial court erred in relying on Hannon's testimony. The trial court did not err by continuing the trial past 4:45 p.m. on March 18 and March 19, at which time the courthouse was closed to the public. Dauzart *813 was afforded a public trial and was allowed the opportunity to admit anyone he deemed necessary for trial. The trial court did not err by not allowing Dauzart to re-open his case once the defense had rested. He was afforded adequate time to decide if he wished to testify and chose not to do so. Finally, the trial court did not impose an excessive sentence. The sixty (60) year sentence was well within the sentencing guidelines and was supported by the evidence on record in the case. The case must be remanded to the trial court with instructions to inform Dauzart of the proper time within which to file an application for post-conviction relief.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
CANNELLA, J., DISSENTS.
CANNELLA, J., DISSENTING.
I respectfully dissent from the majority opinion insofar as it affirms the abuse of discretion by the trial court in refusing to allow defendant and one of his witnesses to testify at the trial.
Assuming, as the majority does although it is not entirely clear from the transcript, that the defense intended to rest when he used the word "rest" prior to requesting that the defendant and another witness be allowed to testify, it does not unequivocally preclude the defense from calling further witnesses. Rather, according to La. C.Cr.P. art. 765(5), it is a matter of judicial discretion. Further, according to the jurisprudence, abuse of that discretion is determined by considering four factors: (1) the timeliness of the motion to reopen the evidence, (2) the nature of the evidence which would be presented, (3) the prejudicial effect granting the motion would have on the State's case and the defendant's case and (4) the reasonableness of the excuse for failing to present the evidence in the defense case-in-chief. United States v. Walker, 772 F.2d 1172 (5th Cir.1985).
After considering these factors in the context of the case before us, it is clear that the trial court abused its discretion in refusing to allow defendant and another witness to testify. First, it isn't entirely clear that the defense rested but, if it did, defense counsel began to protest the trial court's suggestion that he had rested within minutes after his statement. The State had not yet presented any rebuttal and closing arguments had not commenced. The only proceedings that took place during this short span were discussions between counsel and the trial court over admitting some medical documents into evidence. In contrast to this brief period of time, critical evidence, the testimony of the defendant himself and another witness, was excluded. The State's case rested almost entirely on the testimony by the co-perpetrator implicating the defendant. Thus, defendant's version of the events was essential to his defense. Moreover, there was no showing of any prejudice to the State or the trial court in allowing the defendant to testify at that time. In fact, the State did not even object. Finally, in response to the trial court's comment that it had given defense counsel time to speak to his client about testifying, defense counsel explained that his client was mentally slow and that it took him longer than others to understand and make decisions. Thus, given the totality of the circumstances, it was an abuse of the trial court's discretion to refuse to allow the defense to "reopen" its case for the defendant and another witness to testify, especially here where the testimony was essential to the defense presented, there was no prejudice to nor objection by the State and the request came before the case had progressed past the defense's last witness.
Moreover, reversal on these grounds in this case is in line with this court's holding in State v. Calloway, 97-796 (La.App. 5th Cir. 8/25/98), 718 So.2d 559, writs denied, 98-2435 (La.1/8/99) and 98-2438 (La.1/8/99), 734 So.2d 1229. The majority is correct that the cases are distinguishable. Actually, this case is more compelling. In Calloway, trial had proceeded until 8:30 *814 p.m. At that time the defense witnesses, believing that they would not be called that night, had already left the courthouse. The trial court, not wanting to further delay completion of the trial, suggested that the defense put the defendant on the stand at that time. Defense counsel did not want to call the defendant without time to prepare him. So, defense counsel agreed to a compromise with the trial court that if the trial court did not make defendant testify that night, he would put defendant on first the next morning, without calling the other witnesses, thus minimizing any delay. The following morning defense counsel asked to call the other witnesses. The trial court refused to allow the defense to call the witnesses based on the agreement from the night before. Noting the defendant's constitutional right to present a defense which is grounded in both the Louisiana and the United States Constitutions, this court found the trial court ruling to be reversible error.
In this case, unlike Calloway, we are not confronted with merely the right to call witnesses but with the defendant's right to testify on his own behalf concerning crucial elements of his defense. Further, in Calloway, defense counsel had agreed to not call the witnesses in exchange for the court adjourning for the night. In this case, there was no agreement by defense counsel or delay of the trial in any manner. The refusal by the trial court, without objection from the state, to allow the defendant and another witness to testify was simply arbitrary and, therefore, unacceptable.
Accordingly, I dissent from the majority opinion affirming the trial court's abuse of discretion in refusing to allow the testimony of another witness and the defendant on his own behalf regarding crucial elements of his defense, where there was no prejudice to or objection by the State and no delay of the trial.
NOTES
[1] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[2] Id.
[3] State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722; State v. Holmes, 98-490, (La.App. 5th Cir. 3/10/99), 735 So.2d 687.
[4] State v. Ortiz; State v. Stanley, 98-920 (La. App. 5th Cir. 2/10/99), 729 So.2d 33; writ denied, 99-614 (La.6/25/99), 745 So.2d 1186.
[5] State v. Guccione, 96-1049 (La.App. 5th Cir. 4/29/97), 694 So.2d 1060; writ denied, 97-2151 (La.3/13/98), 712 So.2d 869.
[6] Id. at 1067.
[7] State v. Brown, 96-2302 (La.App. 4th Cir. 4/9/97), 692 So.2d 1360; writ denied, 97-1166 (La.11/7/97), 703 So.2d 1263.
[8] 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).
[9] Id. at 46, 104 S.Ct. 2210.
[10] Id. at 45, 104 S.Ct. 2210.
[11] Id.
[12] 297 So.2d 415, 417 (La.1974).
[13] State v. Caillier, 450 So.2d 43 (La.App. 3rd Cir.1984); writ denied, 456 So.2d 168 (La. 1984).
[14] Id. at 46.
[15] 97-796 (La.App. 5th Cir. 8/25/98), 718 So.2d 559; writs denied, 98-2435 (La.1/8/99), 734 So.2d 1229 and 98-2438 (La.1/8/99), 734 So.2d 1229.
[16] Quoting State v. Everidge, 96-2665 (La.12/2/97), 702 So.2d 680.
[17] State v. Mims, 619 So.2d 1059 (La.1993); State v. Holmes, 94-907 (La.App. 5th Cir. 3/15/95), 653 So.2d 642.
[18] See State v. Jackson, 96-661 (La.App. 5th Cir. 4/9/97), 694 So.2d 440; writs denied, 97-1050 (La.10/13/97), 703 So.2d 609, and 97-1255 (La.10/13/97), 703 So.2d 612.
[19] State v. Lobato, 603 So.2d 739 (La.1992); State v. Munoz, 575 So.2d 848 (La.App. 5th Cir.1991); writ denied, 577 So.2d 1009 (La. 1991).
[20] State v. Lanclos, 419 So.2d 475 (La.1982); State v. Riche, 608 So.2d 639 (La.App. 5th Cir.1992); writ denied, 613 So.2d 972 (La. 1993).
[21] State v. Rogers, 405 So.2d 829, 831 (La. 1981).
[22] LSA-C.Cr.P. art. 920; State v. Godejohn, 425 So.2d 750 (La.1983); State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
[23] See State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197 (La.9/5/95), 660 So.2d 1189.
[24] State v. Stelly, 98-578 (La.App. 5th Cir. 12/16/98), 725 So.2d 562.