769 So.2d 1206 (2000)
STATE of Louisiana
v.
Noel E. DAUZART.
No. 99-K-3471.
Supreme Court of Louisiana.
October 30, 2000.
*1207 Margaret Smith Sollars, Thibodaux, Counsel for Applicant.
Richard P. Ieyoub, Atty. Gen., Paul D. Connick, Jr., Dist. Atty., Terry M. Boudreaux, Gretna, Rebecca Jane Becker, for Respondent.
PER CURIAM:[*]
Over a decade ago the Supreme Court observed that "[a]t this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987). While "[t]here is no justification today for a rule that denies an accused the *1208 opportunity to offer his own testimony," id., 483 U.S. at 52, 107 S.Ct. at 2709, the accused's right to testify is not unqualified and "`may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process....'" Rock, 483 U.S. at 55, 107 S.Ct. at 2711 (quoting Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)). Among those "[n]umerous state procedural and evidentiary rules [which] control the presentation of evidence and [which] do not offend the defendant's right to testify," Rock, 483 U.S. at 55, n. 11, 107 S.Ct. at 2711, n. 11, are rules governing the orderly conduct of trial. As in other jurisdiction, see, e.g., Neuman v. Rivers, 125 F.3d 315, 318 (6th Cir.1997), Louisiana limits testimony to the evidence-taking stage of trial. La.C.Cr.P. art. 765(5). Applied to the accused, this rule of procedure "simply imposes a commonsense requirement that the right to testify be exercised in a timely fashion." United States v. Jones, 880 F.2d 55, 60 (8th Cir.1989). In the present case, timeliness was foremost in the mind of the trial judge when he steadfastly refused to allow the defense to reopen its case, after it had ostensibly rested, for purposes of allowing relator to testify, as counsel had committed him to do so in his opening remarks to the jurors.
However, "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." Rock, 483 U.S. at 55-56, 107 S.Ct. at 2711. The order of trial specified in La.C.Cr.P. art. 765(5) does not generally impose an arbitrary restriction on the accused's right to testify because the court also possesses the discretion under the statute to reopen the evidence at any time before closing arguments to permit the taking of additional testimony. State v. Celestine, 443 So.2d 1091, 1096 (La.1983); State v. Bonanno, 373 So.2d 1284, 1293 (La.1979). To the extent that an accused's "right to present his own version of events in his own words" derives in part from the Due Process Clause of the Fourteenth Amendment, Rock, 483 U.S. at 51, 107 S.Ct. at 2709, a trial court must exercise this discretion in a manner which accords with "the fundamental standards of due process." Id., 483 U.S. at 55, 107 S.Ct. at 2711 (internal quotation marks and citation omitted). We granted writs in the present case and now reverse relator's convictions and sentences because the trial court abused its discretion by arbitrarily refusing to allow the defense to reopen its case under circumstances in which the slight deviation from normal practice would have had no impact on the orderly flow of trial from jury selection to verdict and in which strict adherence to the order of trial specified by art. 765(5) cost relator his only opportunity to face jurors and persuade them of his version of events. State v. George, 95-0110, p. 13 (La.10/16/95), 661 So.2d 975, 981 ("An abuse of discretion resulting in prejudice to a defendant's presentation of a defense ... constitutes reversible error.") (citations omitted).
The conflict over relator's right to testify arose in the following context. The state charged relator together with Richard Hannon with two counts of armed robbery in violation of La.R.S. 14:64. The charges stemmed from a robbery committed at the Metro Bank in Kenner, Louisiana, on the morning of October 6, 1996. Shortly thereafter, the police arrested relator and Hannon at separate locations within the Esplanade Mall. The police had followed the men to the mall as they drove away from the bank, relator at the wheel of the vehicle and Hannon crouched directly behind him in the rear passenger seat. In his opening remarks to jurors, relator's counsel addressed this damning circumstantial evidence of relator's role as the driver of the getaway car by characterizing his client as a wholly innocent victim of a chance encounter with Hannon, a sometime acquaintance from years past, which led to a stop at the Metro bank for apparently innocuous purposes, Hannon's commission of the robbery while the unwitting *1209 relator waited outside, and Hannon's flight from the scene in the back seat of relator's car with a gun held to relator's head. Counsel explicitly informed jurors that relator would "definitely take the stand" in support of this exculpatory version of events.
The opening argument by relator's counsel immediately precipitated a motion to sever the defendants by Hannon's attorney on grounds that the antagonistic defense outlined by relator would force his client to defend against not only the state but also his co-defendant. The trial court denied the motion but on the following morning, with the state's case in chief about to begin, Hannon rendered the severance issue moot by pleading guilty to the charges. Hannon then took the stand as a state witness and told jurors that he and relator, not casual acquaintances but lifelong friends, had planned and executed the robbery together. Hannon also informed jurors that he had previously rejected all other offers of a plea bargain out of misplaced loyalty to relator but changed his mind as he listened to the opening remarks of relator's counsel and realized that relator was prepared to betray "my trust and my friendship."
At the close of the state's case, defense counsel called the health administrator for the Jefferson Parish Correctional Center for purposes of identifying records of the medical treatment relator received after his arrest. A brief recess followed, during which counsel apparently spoke to relator and other witnesses outside the courtroom about testifying. When the jury returned and proceedings resumed, counsel informed the court that he would rest "subject to introducing the medical records." The court immediately ordered the records introduced but then excused the jurors once more and spent over half an hour with counsel in an effort to cull out the relevant documents from a much larger file. Toward the end of this process, with the jury still out and with discussion about the court's general charge to the jury also underway, counsel informed the court that relator "has thought about it and decided he wishes to take the witness stand." Counsel pointed out that "we've been very busy doing medical records for the last 45 minutes," and argued that because "nothing further has happened in the trial, no one is prejudiced at this time." The trial court denied the motion, and counsel's subsequent motion for a mistrial, returned the jury to the courtroom, and distributed copies of the medical records introduced by counsel for inspection by the jurors. The court then recessed trial for the night after denying counsel's request for time in which to seek review of its ruling precluding relator's testimony. On the following morning, trial resumed its normal course from closing arguments to the court's general instructions, and to the jury's verdicts finding relator guilty as charged.
On appeal, a majority of the Fifth Circuit panel found in pertinent part that the trial court's decision not to allow the defense to reopen its case was "neither arbitrary [n]or capricious." State v. Dauzart, 99-0730, p. 9 (La.App. 5th Cir. 11/30/99), 749 So.2d 806, 811. However, we agree with the dissenting views of Judge Cannella, who concluded that "given the totality of the circumstances, it was an abuse of the trial court's discretion to refuse to allow the defense to `reopen' its case for the defendant ... to testify, especially here where the testimony was essential to the defense presented, there was no prejudice to nor objection by the State and the request came before the case had progressed past the defense's last witness." Dauzart, 99-0730 at 2, 749 So.2d at 813 (Cannella, J., dissenting).
Jurors had been in the courtroom when counsel first announced that the defense rested subject to introducing relator's medical records and taking the testimony of any witness out of normal sequence may give the evidence "distorted importance merely be being introduced after a reopening." United States v. Larson, 596 F.2d 759, 779 (8th Cir.1979). It may also prejudice *1210 the state if it has already presented rebuttal testimony by providing the defendant with an opportunity to review the evidence before deciding whether to take the stand. In the present case, however, jurors had not yet had the opportunity to view the defense documentary exhibits when counsel "rested" and then moved to "reopen" its case. To that extent the defense case was still underway and jurors would not likely have understood the timing of relator's testimony as out of turn and therefore extraordinary. Moreover, the state had announced it had no rebuttal to offer and, even assuming relator's testimony may have changed the state's decision in that regard, the record contains no suggestion that it could not have reassembled its witnesses in rebuttal after the lapse of no more than an hour it took the counsel and court to sort out the documentary exhibits. Hannon, the most important potential rebuttal witness, remained available as he had previously pleaded guilty to the charges and was awaiting sentencing. Relator's testimony likely would have had no impact on the course of the proceedings as trial in any event continued into the next day with closing arguments and the court's jury instructions, giving the state an adequate opportunity to respond to relator's testimony. Cf. Jones, 880 F.2d at 60, n. 5 ("[B]y the time the request to testify was made, the parties had prepared jury instructions and summations and potential rebuttal witnesses had been released and were unavailable.").
More importantly, jurors as well as the trial judge had heard counsel promise that relator would testify in support of his defense that Hannon had compelled him at gun point to participate in the robbery as the getaway driver. The trial court's ruling stripped the defense outlined by counsel in his opening remarks of its evidentiary basis and exposed it to the ridicule of the prosecutors during closing argument who described counsel's remarks as "asinine" and "ridiculous," and, borrowing from Shakespeare, "as a tale told by an idiot ... signifying nothing." Jurors were also left to speculate about why relator had broken the promise made to them by counsel. The state may have had substantial circumstantial evidence linking relator to the Metro Bank robbery, but Hannon was the only witness who could face jurors directly and tell them of relator's involvement in the planning and execution of the robbery. By the same token, relator alone could give his version of the events surrounding his arrest. In light of the blueprint furnished by counsel in his opening remarks to jurors, we need not speculate here about the nature of the testimony relator intended to offer nor whether, if found plausible by the jury, his version of events constituted a defense to the charges against him. See R.S. 14:18(6) (The defense of justification may be claimed "[w]hen any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed....").
Because "the most important witness for the defense in many criminal cases is the defendant himself," Rock deemed the accused's right to present his or her testimony at trial "[e]ven more fundamental to a personal defense than the right of self-representation" under the Sixth Amendment. Rock, 483 U.S. at 52, 107 S.Ct. at 2709; see also United States v. Walker, 772 F.2d 1172, 1179 (5th Cir. 1985) ("Where the very point of a trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance."). No matter how daunting the task, the accused therefore has the right to face jurors and address them directly without regard to the probabilities of success. As with the right of self-representation, denial of the accused's right to testify is not amenable to harmless-error analysis. The right "is either *1211 respected or denied; its deprivation cannot be harmless." McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984).
Accordingly, relator's convictions and sentences are reversed and this case is remanded to the district court for further proceedings in accord with the law.
CONVICTIONS AND SENTENCES REVERSED; CASE REMANDED.
NOTES
[*] Melvin A. Shortess, J., Ad Hoc, sitting for Calogero, C.J., recused.