948 So.2d 296 (2006)
STATE of Louisiana
v.
Jarmar BUTLER.
No. 06-KA-645.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2006.
*297 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Andrea F. Long (Appellate Counsel), Donald A. Rowan, Jr. (Trial Counsel), Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee, The State of Louisiana.
Margaret S. Sollars, Louisiana Appellate Project, Attorney at Law, Thibodaux, Louisiana, for Defendant/Appellant, Jamar Butler.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and GREG G. GUIDRY.
SUSAN M. CHEHARDY, Judge.
Jarmar Butler appeals his conviction of unauthorized entry of an inhabited dwelling *298 and the five-year sentence imposed. We affirm the conviction and the sentence, and remand the matter for correction of a patent error.
On August 10, 2004, the Jefferson Parish District Attorney filed a three-count bill of information against Jarmar Butler, comprising Count 1, violation of La.R.S. 14:56 (simple criminal damage to furniture and clothing in excess of $500), and Counts 2 and 3, violations of La.R.S. 14:62.3 (unauthorized entry of an inhabited dwelling). At arraignment the defendant pleaded not guilty.
On January 5, 2005, the defendant proceeded to trial on Count 3 before a six-person jury. Count 3 charged the defendant with unauthorized entry of an inhabited dwelling located at 1113 Tallowtree Lane, Apartment B, belonging to Shandraka Antoine. The jury found the defendant guilty.
On February 4, 2005, the trial court sentenced the defendant to imprisonment at hard labor for a term of five years, with credit for time served. On the same date the prosecutor dismissed the other two counts.[1]
The defendant subsequently filed a motion to reconsider sentence, which the trial court dismissed after neither the defendant nor his attorney appeared at the hearing. The defendant's attorney failed to make either an oral or a written motion for appeal, but the defendant filed a pro se application for post-conviction relief seeking an out-of-time appeal, which the trial court granted.[2]
On May 15, 2006, the defendant filed a pro se "Motion For Modification Of Sentence And/Or Amendment Of Sentence," seeking to amend his sentence to home incarceration, but the trial judge denied the motion.

FACTS
On April 14, 2003, Shandraka Antoine filed a restraining order against the defendant, who is the father of her five-year-old daughter. Nine days later, on April 25, 2003, Antoine was inside her apartment at 1113 Tallowtree Lane around 12:00, when she saw the defendant standing in the hallway of the apartment. Antoine testified that they tried to talk, but started arguing. She told the defendant to leave and threatened to call the police.
The defendant went downstairs and returned with a knife. Antoine testified she believed the defendant had picked up the knife just to scare her so that she would not call the police. When she told him she was on the phone with the police, he went downstairs and dropped the knife on the kitchen floor. When asked by the prosecutor if she had let the defendant inside, Antoine replied, "Not that night."[3]
*299 Deputy Thomas Cutri of the Jefferson Parish Sheriff's Office responded to the 911 call. Upon arrival, Deputy Cutri found Antoine at the apartment alone. She was angry, upset and frightened. She said she wanted to press charges.
Deputy Cutri found a butcher knife with a black handle and a 12-inch blade in the kitchen. Deputy Cutri took Antoine's statement, which was introduced into evidence. In it Antoine said the defendant came to her residence in violation of the restraining order and opened her door without her permission. She told him to leave and that she was calling the police.
When she told him she was on the telephone with the police, he ran upstairs to where Antoine was located and grabbed the phone from her. He had a knife in his hand and he asked if she had called the police. When she answered affirmatively, he "jabbed" the knife at her, ran downstairs, dropped the knife on the kitchen floor, and fled the apartment. When asked if she thought the defendant intended to harm her when he thrust the knife at her, she answered affirmatively.
At trial, Antoine testified she had tried to drop the charges before trial and that she thought the event had been blown out of proportion. Antoine testified that she and the defendant planned to be married sometime during the next summer and that she did not want to see the defendant go to jail. However, she acknowledged that everything contained in her statement was true.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment, the defendant contends the evidence at trial was insufficient to support a conviction for unauthorized entry of an inhabited dwelling. He claims the State failed to show that he did not have the authority to enter Antoine's apartment because of his history of unrestricted access to her apartment prior to the restraining order. According to the defendant, Antoine made his entry authorized by not asking him to leave immediately.
The State responds that the evidence shows beyond a reasonable doubt that the defendant entered the apartment without authority.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
Unauthorized entry of an inhabited dwelling is defined by La.R.S. 14:62.3 A as "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." An unauthorized entry is an entry without consent, express or implied. State v. Rivet, 01-353 (La.App. 5 Cir. 9/25/01), 798 So.2d 219, 224, citing State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 931, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). In the case of a private residence, a person must have the consent of the occupant or an occupant's agent to constitute a defense to unauthorized entry. Id.
In State v. Spain, 99-1956 (La.App. 4 Cir. 3/15/00), 757 So.2d 879, the court rejected an argument similar to that advanced by the defendant here. The Spain court found that the evidence supported *300 the defendant's conviction for unauthorized entry of an inhabited dwelling, even though the defendant was the father of the victim's child, and had previously entered the victim's home on social occasions.
In Spain, the victim was in her kitchen when the defendant suddenly appeared and pushed her. He struck her arm with a hammer. He then attempted to strike the victim's boyfriend, who was in another room visiting with friends. 757 So.2d at 881-882. In rejecting the defendant's claim that his entry was authorized, the Spain court pointed out that, even though the victim's consent was broad, it was conditioned on her expectations of non-aggressive, civilized behavior. The court concluded a rational juror could have found beyond a reasonable doubt that the terms of the victim's consent for the defendant to enter were exceeded under these circumstances. 757 So.2d at 884.
Similarly, in State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, the victim found the defendant inside the hallway of her home one morning after hearing noises during the night. The victim, the defendant's ex-wife, ordered him to leave, retrieved a pistol, and after some discussion, the defendant left. This Court held the evidence was sufficient to support the defendant's conviction for unauthorized entry into an inhabited dwelling. 735 So.2d at 691.
In the case before us, the defendant contends his entry was authorized, because Antoine did not ask him to leave right away. While Antoine acknowledged she did not immediately ask the defendant to leave, she testified she did not authorize the defendant's entry into her home. In addition, there was a restraining order against the defendant at the time of his entry into Antoine's apartment. When Antoine told the defendant she was calling the police, he armed himself with a 12-inch butcher knife. Antoine demonstrated for the jury at trial how the defendant held the knife. It was only after Antoine told him she had called the police that the defendant dropped the knife in the kitchen and left.
Credibility determinations are for the jury, and it is not the function of the appellate court to assess the credibility of the witnesses. See, State v. Ditcharo, 98-1374 (La.App. 5 Cir. 7/27/99), 739 So.2d 957, 966, writ denied, 99-2551 (La.2/18/00), 754 So.2d 964. Considering the evidence in the light most favorable to the prosecution, we find the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant intentionally entered the Antoine's home without authorization.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment, the defendant asserts that the bill of information on which the sentence is based is invalid. He contends his conviction was nullified by the prosecutor's written amendment to the bill of information that dismissed Counts 2 and 3 of the bill of information. According to the defendant, the bill of information was defective, rendering his sentence invalid because he was sentenced on a count that was dismissed.
The State contends that the inadvertent post-sentencing dismissal of Count 3 did not nullify the defendant's conviction on that count.
The record in this case reflects that Count 3 of the bill of information charged the defendant with unauthorized entry into an inhabited dwelling belonging to Antoine. The record reflects that the defendant proceeded to trial on Count 3 and was convicted of Count 3. After the judge sentenced the defendant on Count 3, the trial *301 court's clerk asked the prosecutor what he intended to do with the other two charges. The prosecutor responded that he would "dismiss the other two." The minute entry/commitment reflects that Counts 1 and 2 were dismissed. However, the prosecutor wrote on the bill of information that Counts 2 and 3 were dismissed.
La.C.Cr.P. art. 691 provides that a prosecutor may dismiss a charge as follows:
The district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment, and in order to exercise that power it is not necessary that he obtain consent of the court. The dismissal may be made orally by the district attorney in open court, or by a written statement of the dismissal signed by the district attorney and filed with the clerk of court. The clerk of court shall cause the dismissal to be entered on the minutes of the court.
La.C.Cr.P. art. 692 provides for the dismissal of charges after a conviction:
After conviction, the district attorney is authorized to dismiss an indictment or count thereof only:
(1) When a new trial has been granted.
(2) When a motion in arrest of judgment has been sustained.
The State may nolle prosequi a case after the verdict has been rendered and before sentencing with the trial court's permission. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 99.
The Johnson court cited this Court's decision in State v. Hoyal, 516 So.2d 146 (La.App. 5 Cir.1987). In Hoyal we addressed the prosecutor's authority to dismiss an indictment after the defendant was convicted and before sentencing as follows:
[O]ur jurisprudence indicates that the district attorney's office can enter a nolle prosse after the verdict has been rendered and before sentencing as long as he has the trial court's permission. . . . We note the trial judge granted the district attorney's motion to nolle prosse the indictment for aggravated rape. We suggest that a reading of La. C.Cr.P. art. 692 in pari materia with art. 691 and the jurisprudence interpreting it makes it apparent that the limitations in art. 692 were meant to apply to the district attorney's authority to nolle prosse a case without the consent of the court. [Emphasis in original; citations and footnote omitted].
Hoyal, 516 So.2d at 149.
State v. Knight, 526 So.2d 452 (La.App. 5 Cir.1988), is similar to the present case. There, the defendant proceeded to trial on one count of a two-count indictment. After he was convicted and sentenced on that count, the district attorney dismissed both counts of the indictment. The record reflected there was a notation on the bill of information, as well as the minute entry, indicating that the district attorney dismissed both counts, not just the one that was not prosecuted.
Based on the reasoning in Hoyal, supra, the Knight court held that the prosecutor had no authority to dismiss the indictment, stating as follows:
Noting specifically that the record does not reflect that the trial judge gave the district attorney permission to dismiss the indictment, statutory law and this Court's policy as stated in State v. Hoyal, supra, cause us to find the district attorney had no authority whatsoever to dismiss the indictment once the conviction had taken place.
Knight, 526 So.2d at 455.
As in Knight, this record does not reflect that the trial judge gave the district attorney permission to dismiss Count 3 of the bill of information after the defendant *302 was convicted.[4] In fact, the transcript of the defendant's sentencing reflects that the prosecutor orally dismissed Counts 1 and 2. Even though the bill of information reflects that the prosecutor dismissed Count 3, the prosecutor had no authority to dismiss Count 3 once the conviction had taken place. Therefore, there is no merit to this assignment.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant asserts the trial court erred by not giving reasons for its excessive sentence. Specifically, the defendant contends his five-year sentence at hard labor is constitutionally excessive for a first-felony offender.
According to the defendant the sentence, which is one year shy of the maximum term, is unjustified because the matter arose out of a domestic dispute where the victim wanted to drop the charges, and because he is a good father. The defendant also complains that the trial judge failed to provide reasons to support the sentence. The State responds that the trial judge did not abuse his discretion in sentencing defendant.
In this case, the defendant filed a motion to reconsider sentence, asserting among other things, that the sentence was excessive because of his background and because the victim tried to drop the charges. However, the motion was dismissed after the defendant and his attorney did not appear for the hearing.
The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Dupre, 03-256 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is excessive if it is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, or if it imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992). The trial judge has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Thompson, 02-333 (La.4/9/03), 842 So.2d 330, 338.
A conviction of unauthorized entry of an inhabited dwelling carries a maximum sentence of six years, with or without hard labor, and the possibility of a one thousand dollar fine. The defendant, who was twenty-four years old at the time of sentencing, received a five-year sentence of imprisonment at hard labor without a fine.
In the present case, the trial court did not provide specific reasons for the sentence imposed. However, the trial court is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 933, writ denied, 04-1640 (La.11/19/04) 888 So.2d 192.
The defendant's conduct cannot be excused merely because his behavior was rooted in a domestic dispute. In Holmes, supra, this Court held that the trial court *303 did not abuse its discretion in sentencing a defendant convicted of unauthorized entry of an inhabited dwelling to three years at hard labor. The defendant in Holmes had claimed that the sentence was excessive because he had no prior serious involvement with the law, the matter involved a domestic dispute with his ex-wife, and no one was injured. 735 So.2d at 689, 691-692.
See also, State v. Grimes, 527 So.2d 1079, 1081 (La.App. 1 Cir.1988), writ denied, 533 So.2d 15 (La.1988), where the court held a maximum six-year sentence was not excessive for a first felony offender convicted of unauthorized entry into an inhabited dwelling.
We distinguish State v. Pike, 426 So.2d 1329 (La.1983), cited by the defendant in support of his argument. Pike was a simple burglary case in which the Louisiana Supreme Court held that a three-year sentence at hard labor was "apparently severe" because the record did not contain "adequate explanation or justification" for the sentence. The court remanded the case for compliance with La.C.Cr.P. art. 894.1.
In Pike, the victim discovered her neighbor hiding in her closet after he came inside to obtain a "joint." 426 So.2d at 1331. There was evidence that the defendant had been to the victim's house on social occasions. However, Pike is distinguishable, because in the instant case the defendant entered the house of his girlfriend in violation of a restraining order and armed himself with a knife while inside.
Prior criminal activity is one of the factors to be considered by the trial judge in sentencing a defendant. State v. Washington, 414 So.2d 313, 315 (La.1982). Although the trial court did not provide specific reasons for the sentence, the record reflects that the judge was aware the defendant previously had been convicted of a similar offense in Georgia.
At the sentencing hearing, the prosecutor told the judge that the State had intended to use the Georgia conviction to charge the defendant as a multiple offender, but had discovered that Georgia had "charged him with the lesser offense of the misdemeanor." The trial judge asked if the Georgia conviction involved a similar type of offense, and the prosecutor responded affirmatively.
The evidence at trial showed the defendant entered the victim's home despite the restraining order and without her authorization, confronted her with a butcher knife, and left only because she had called the police. The restraining order and supporting documents show that the defendant had a propensity toward violence to the victim. Finally, the prosecutor stated at sentencing that the defendant had a similar conviction (a misdemeanor in the State of Georgia), without contradiction from the defendant.
The Louisiana Supreme Court has stated that the question presented when reviewing a defendant's sentence is not "whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion." State v. Jones, 99-2207 (La.1/29/01), 778 So.2d 1131, 1133. Thus, the sentence should only be set aside if the panel finds that the trial judge abused his broad sentencing discretion.

ERROR PATENT DISCUSSION
Our patent error review, conducted pursuant to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990), reveals two patent errors.
First, the jury returned a verdict of "guilty," without specifying the offense *304 upon which the guilty verdict was based. There were three possible verdicts, each of which was listed on the other side of the verdict form.
Because the verdict is a part of the pleadings and proceedings, any error therein is reviewable as an error patent. State v. Robinson, 04-964 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1127. In Robinson, the defendant was charged with possession of cocaine, and the jury was instructed that the single word "guilty" was a responsive verdict. The jury was further instructed that another responsive verdict was "guilty of attempted possession of cocaine." This Court held that a review of the record as a whole reflected that the jury clearly conveyed its intention to find the defendant guilty as charged when returning a verdict of "guilty" without specifying the verdict upon which the offense was based. We concluded that, if the jury had intended to find defendant guilty of the lesser offense of attempted possession of cocaine, they were instructed to find the defendant "guilty of attempted possession of cocaine," as opposed to "guilty." 896 So.2d at 1129.
As in Robinson, the trial judge here instructed the jury that they could return three verdicts in the case:
One is guilty, which is guilty of unauthorized entry of an inhabited dwelling;
Two, guilty of attempted unauthorized entry of an inhabited dwelling;
And three, not guilty.
In addition, the verdict form in this case conforms to the trial judge's instruction to the jury. If the jury in this case had intended to find the defendant guilty of a lesser offense, it would have returned a verdict of "guilty of attempted of unauthorized entry of an inhabited dwelling," as opposed to "guilty."
The second patent error involves the court's advice to the defendant regarding his post-conviction rights. The minute entry for the defendant's hard-labor commitment states that the defendant has two years after his conviction and sentence becomes final to file for post-conviction relief. The transcript for that same date, however, indicates that the trial judge informed the defendant that he had ". . . two years to file post conviction relief applications."
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). La.C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. Accordingly, the defendant received an incomplete advisal of his rights.
To remedy the error, we will follow our usual procedure and remand the case to the trial court with instructions for correction. See, State v. Tran, 05-518 (La.App. 5 Cir. 12/27/05), 919 So.2d 787, 795.
For the foregoing reasons, the conviction and sentence are affirmed and the case is remanded. The trial court is ordered to inform the defendant of the correct prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant within fifteen days after the rendition of this Court's opinion, and to file written proof in the record that the defendant received the notice.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTION.
NOTES
[1] The prosecutor wrote on the bill of information, "Dismissed on Ct. 2,3 only [signed] Donald A Rowan Jr ADA 2-4-05" The effect of the prosecutor's writing "3" rather than "1" is discussed infra under Assignment of Error Number Two.
[2] This is the second time this case is before this Court. The prior appeal was lodged as No. 06-KA-466. In reviewing the record we determined that the jury verdict was ambiguous and the record did not contain enough information to determine the jury's intent. On July 21, 2006, we dismissed the appeal, remanded for completion of the record, and ordered that when completed, the record be re-lodged with this Court. When re-lodged on August 31, 2006, the appeal was designated No. 06-KA-645 and the previous appellate record, 06-KA-466, was included as an exhibit to the current record.
[3] It is not clear from the testimony whether the incident occurred during the day or the night. Antoine said she did not let the defendant in "that night." However, the police report reflects that police responded at 11:55 a.m.
[4] The record reflects that the prosecutor wrote on the bill of information on the same day of sentencing, but it does not reflect a time. Therefore, it is unknown precisely when the prosecutor made the written amendments.