WICKER, J.
Defendant appeals his conviction for cruelty to the infirmed in violation of La. R.S. 14:93.3, and his enhanced twenty-year sentence as a multiple offender under La. R.S. 15:529.1. For the following reasons, we affirm defendant's conviction and his sentence, as amended, to remove the restriction on parole eligibility.
STATEMENT OF THE CASE
On July 3, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant, Kevin Deubler, with cruelty to the infirmed in violation of La. R.S. 14:93.3.[1] On July 8, 2014, defendant was arraigned and entered a plea of not guilty. On September 2, 2015, the State filed a Motion to Perpetuate Victim/Witness for Preservation of Testimony for Trial. The trial court considered the State's motion and held a preliminary examination on December 17, 2015, at which the alleged victim and an investigating officer testified.
*755 [2] Defendant waived his right to a jury trial and, on November 28, 2016, the trial judge found defendant guilty as charged.[3]
On January 3, 2017, defendant filed a Motion for New Trial, which the trial judge denied. On March 7, 2017, after defendant waived sentencing delays, the trial judge sentenced defendant to seven years at hard labor without any restrictions. The State filed a multiple offender bill against defendant and, on April 4, 2017, the trial judge found defendant to be a third felony offender pursuant to La. R.S. 15:529.1. The trial court vacated defendant's original sentence and sentenced defendant to twenty years in the Department of Corrections without benefit of probation, parole, or suspension of sentence.[4] This timely appeal follows.
FACTUAL BACKGROUND
Officer Eric Meyers[5] with the Harahan Police Department testified that, on May 21, 2014, he was on duty at the Harahan police station when Ms. Deubler walked in to report an incident involving her son. Ms. Deubler provided two recorded statements to Officer Meyers. In her statements, Ms. Deubler provided that on the morning of May 21, 2014, her son, defendant, came home from the store after he had consumed alcoholic beverages and "started roughing [her] up." Ms. Deubler reported that defendant hit her with a little baseball bat and that she tried to get away from him, but he kept following her around the house. She also reported that defendant grabbed her shirt, tore the buttons off, and tried to choke her with her shirt collar, to the point that she was briefly unable to breathe. She also reported that he showed her a "nice little knife" and its blade, which he threatened to use on her that night.[6]
Officer Meyers recalled that at the time Ms. Deubler came in to the police station, she seemed frightened and feared for her safety. He further recalled that Ms. Deubler was "covered" in bruises, some of which appeared older and in the process of healing while others appeared fresh. Officer Meyers recalled that the bruises were consistent with Ms. Deubler's account of the events. Investigating officers took photographs of Ms. Deubler's injuries, which were introduced into evidence and reflect bruising and injuries consistent with Ms. Deubler's statements to Officer Meyers. After Ms. Deubler provided her statements, Officer Meyers obtained her permission to enter her home to arrest defendant.
When Officer Meyers and Jefferson Parish deputies arrived to the house, they attempted to enter by unlocking the front door but felt resistance. Eventually, the officers discovered that defendant had duct taped the door's locking mechanism from *756 the inside.[7] Once they realized this, they applied force to the duct tape to gain entrance to the house and arrested defendant.[8] Defendant did not make any statements at the time of his arrest.
Rebecca Deist, a paramedic with the East Jefferson "EMS," was called on May 21, 2014, to assess Ms. Deubler's physical condition at the Harahan Police Department. Ms. Deist testified that Ms. Deubler refused medical treatment and refused to be transported to the hospital. Ms. Deist created a "run report" of her assessment, wherein she documented Ms. Deubler's sustained injuries.
Christine Butler testified at trial that she is Ms. Deubler's daughter and defendant's sister. Ms. Butler testified that her mother is eighty-six years old and suffers from dementia. She explained that Ms. Deubler was diagnosed with dementia approximately one year after the incident involving defendant and that, although she takes prescription medication, the condition continued to worsen.
Ms. Butler confirmed that, in 2014, defendant resided with their mother in Harahan. She received a phone call from her uncle on the morning of May 22, 2014, which caused her to bring her mother to Ochsner emergency room that morning. She further testified that the photographs introduced into evidence accurately depicted the visible bruising to Ms. Deubler's body and that she had never seen any similar bruising on her mother's body prior to May 22, 2014. At trial, Ms. Butler identified a letter dated July 31, 2014, written in defendant's handwriting, which was mailed to Ms. Deubler at her home address. The letter, introduced into evidence at trial, contains apologies and asks for Ms. Deubler's forgiveness, stating that she was never the "intended target of [his] angers."[9]
Ms. Deubler testified at trial that she was eighty-six years old, her date of birth was December 20, 1929, and she had three children, Al Deubler, Christine Butler, and defendant. When asked about her memory, she said it was "shot," and it was "not there" for her. She stated clearly that her memory had "gotten worse" and that she could not make sense of many of the questions asked. Ms. Deubler stated she could not recall exactly why she was in court but that she knew she was there because of something to do with her son, defendant. When shown the photographs introduced into evidence of her injuries, Ms. Deubler identified the photographs of herself. She testified that, although she does bruise easily, the photographs were taken when she was "getting beat up." When asked who "beat her up," she replied her son, defendant, beat her up. She could not remember where she was when she sustained her injuries, but she "guess[ed]" it was at home. She recalled that she went to the police after she was beaten but could not remember what she told them.
*757 Ms. Deubler admitted that she could not recall her prior testimony or what she told doctors at Ochsner emergency room, but indicated that she most likely told the truth to her treating doctors because she does not lie often.[10] When she listened to her recorded statements to Officer Meyers, she testified that she did not recall giving the statements but responded that she "of course" would have provided the truth to investigating police officers. Ms. Deubler, in her testimony, could not recall how she got her injuries, including whether defendant threatened her with a knife or a bat. However, when asked directly who caused her injuries, she consistently responded that her son, defendant, caused the injuries.
Felicia Sullivan, Ms. Deubler's next door neighbor, testified at trial that defendant resided next door with Ms. Deubler "off and on" from late 2012 through May 2014. She testified that she overheard defendant screaming obscenities at Ms. Deubler "almost nightly" from her backyard. Ms. Sullivan testified that, on one Saturday night in April 2014, she stepped outside of her home to record the screaming because it was so loud. The State introduced into evidence two video and audio recordings, during which one can hear a male screaming loudly and calling someone a "bitch."[11] Ms. Sullivan testified that for a period of time between January 2014 and May 2014, she and other neighbors discussed the screaming coming from Ms. Deubler's residence almost nightly.[12]
DISCUSSION
In his pro se assignments of error as well as his first counseled assignment of error, defendant challenges the sufficiency of the evidence presented against him at trial.[13] First, defendant claims there is no evidence to prove that his mother was competent at the time she reported the incident, pointing to Ms. Deubler's inconsistent testimony and lack of memory concerning the alleged offense. Second, defendant argues that the State failed to prove that Ms. Deubler sustained the statutorily required injuries, contending that the "simple bruising" Ms. Deubler sustained does not reach the level of "unjustifiable pain or suffering" required under La. R.S. 14:93.3.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. State v. Bone , 12-34 (La. App. 5 Cir. 09/11/12), 107 So.3d 49, 58, writ denied , 12-2229 (4/1/13), 110 So.3d 574, citing Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. King , 06-554 (La. App. 5 Cir. 1/16/07), 951 So.2d 384, 390, writ denied , 07-0371 (La. 5/4/07), 956 So.2d 600.
*758 An appellate court's primary function is not to redetermine the defendant's guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, our function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury's conclusion. State v. Banford , 94-883 (La. App. 5 Cir. 3/15/95), 653 So.2d 671, 677. Evidence may be direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. State v. Bone, supra . All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
When the trier of fact is confronted by conflicting testimony, fact findings rest solely with the judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Watson , 08-214 (La. App. 5 Cir. 8/19/08), 993 So.2d 779, 785.
Defendant was found guilty as charged of cruelty to the infirmed, a violation of La. R.S. 14:93.3. At the time of the offense, La. R.S. 14:93.3 provided, in pertinent part:
A. Cruelty to the infirmed is the intentional or criminally negligent mistreatment or neglect by any person, including a caregiver, whereby unjustifiable pain, malnourishment, or suffering is caused to the infirmed, a disabled adult, or an aged person, including but not limited to a person who is a resident of a nursing home, mental retardation facility, mental health facility, hospital, or other residential facility.
* * *
C. For the purposes of this Section, an aged person is any individual sixty years of age or older.
Accordingly, cruelty to the infirmed is the intentional or criminally negligent mistreatment of an aged person whereby unjustifiable pain, malnourishment, or suffering is caused. The term "intentional" as used in this statute refers to a general criminal intent to mistreat or neglect and does not require an intent to cause unjustifiable pain and suffering. State v. Adams , 10-855 (La. App. 5 Cir. 11/15/11), 78 So.3d 222, 233, writ denied , 12-0434 (La. 6/1/12), 90 So.3d 434 ; State v. Scott , 582 So.2d 864, 867 (La. App. 5 Cir. 1991), writ denied , 584 So.2d 1171 (La. 1991). "Unjustifiable" within the meaning of La. R.S. 14:93.3 is a term of limitation intended to distinguish that pain and suffering, which is an inevitable consequence of care and treatment of an aged person, from that which is not justified by medical needs. State v. Brenner , 486 So.2d 101, 104 (La. 1986). "Mistreatment" is in common usage and is equated with "abuse." State v. Comeaux , 319 So.2d 897, 899 (La. 1975) ; Adams , supra . The determination of whether the requisite intent is present in a criminal case is a question of fact. Adams , supra .[14]
The evidence presented at trial showed that Ms. Deubler, an eighty-four-year-old woman at the time of the offense, reported to officers that her son, defendant, had "roughed [her] up," hit her with a small baseball bat, strangled her with her own shirt collar, and threatened to use a knife "on" her. The testimony at trial *759 established that Ms. Deubler reported the incident to medical and police personnel before she was diagnosed with dementia, at which time she was able to drive herself to the police station to report defendant's abuse. Ms. Deubler's audio-recorded statements taken by Officer Meyers further reflect her lucidity at the time of the incident. Although Ms. Deubler could not remember the specific details of abuse at the perpetuation of testimony hearing or at trial, the testimony established she had worsening dementia. Nevertheless, even though Ms. Deubler became confused during questioning concerning details of the abuse, during the preliminary examination and during trial, she never wavered that it was defendant who harmed her.
The medical records and photographs introduced into evidence show that Ms. Deubler was covered in bruises, both fresh and healing. The Ochsner Hospital medical records report Ms. Deubler's own account to treating physicians that her son hit her on the head with a bat, punched and kicked her, and dragged her across the house by her blouse.[15] The photographs introduced into evidence reflect a red ring around Ms. Deubler's neck consistent with the statements she provided to Officer Meyers that defendant strangled her with a shirt collar. The EMS "run report" and Ms. Deubler's statements further corroborate that defendant "beat her up." The video recordings show a male, who Ms. Sullivan, Ms. Deubler's neighbor, knew to be defendant, screaming obscenities in the month leading up to the incident. Ms. Sullivan further testified that she heard loud screaming and cursing from Ms. Deubler's residence almost nightly in April and May of 2014.
Upon our review of the record, we find the evidence presented at trial was sufficient to support defendant's conviction for cruelty to the infirmed in violation of La. R.S. 14:93.3. The testimony and evidence introduced at trial established that defendant had the general criminal intent to mistreat or neglect his mother, an aged person, by screaming at and hitting her, which caused extensive bruising to multiple parts of her body.
In his second counseled assignment of error, defendant contends that his enhanced twenty-year sentence is constitutionally excessive. Defendant argues that he was sentenced to the statutory maximum under La. R.S. 15:529.1(A)(3) and that he is not the worst type of offender for which maximum sentences are reserved. The State responds that defendant's sentence is statutorily authorized and points out that defendant's two prior convictions are designated crimes of violence under La. R.S. 14:2, which demonstrates defendant's pattern of violence over a long period of time. The State further contends that it could have filed a "quad bill" against defendant and he could have been adjudicated a fourth-felony offender.
The record reflects that defendant orally objected to his enhanced sentence but did not allege any specific grounds for excessiveness. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only. State v. Warmack , 07-311 (La. App. 5 Cir. 11/27/07), 973 So.2d 104, 108 ; see also LSA-C.Cr.P. art 881.1.
*760 The imposition of excessive punishment is prohibited by both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution. State v. Evans , 09-477 (La. App. 5 Cir. 12/29/09), 30 So.3d 958, 966, writ denied , 10-0363 (La. 3/25/11), 61 So.3d 653 (citing State v. Lawson , 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622 ). A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. Id. citing State v. Lobato , 603 So.2d 739, 751 (La. 1992) ; Lawson , 885 So.2d at 622 ). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Evans, supra at 966. An appellate court considers three factors in reviewing a trial court's sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. McClure , 15-237 (La. App. 5 Cir. 09/23/15), 176 So.3d 730, 733, State v. Stewart , 03-920 (La. App. 5 Cir. 1/27/04), 866 So.2d 1016, 1027-28, writ denied , 04-0449 (La. 6/25/04), 876 So.2d 832.
On April 4, 2017, after a hearing at which the State presented competent evidence to prove the allegations in the multiple bill, the trial judge adjudicated defendant as a third felony offender pursuant to La. R.S. 15:529.1(A)(3). As a third felony offender, defendant faced an enhanced sentence of not less than two-thirds of the longest possible sentence for the underlying conviction of cruelty to the infirmed and not more than twice the longest possible sentence for a first conviction. Accordingly, defendant faced a sentencing range of seven-and-a-half years to twenty years imprisonment. At the multiple offender hearing, the State proved by competent evidence that defendant had two previous felony convictions, one for aggravated criminal damage to property in violation of La. R.S. 14:55 in the 24th Judicial District Court for the Parish of Jefferson from 2005, and one for aggravated battery in violation of La. R.S. 14:34 in Orleans Parish Criminal District Court in 1990. Defendant's predicate convictions are both classified as crimes of violence under La. R.S. 14:2. Therefore, the State demonstrated that defendant has maintained a pattern of violence since his first conviction for aggravated battery in 1990. Although cruelty to the infirmed under La. R.S. 14:93.3 is not a designated crime of violence under La. R.S. 14:2, the evidence at trial reflects that defendant used physical force in the commission of this crime, by beating and strangling his eighty-four-year-old mother.
The trial court is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams , 03-3514 (La. 12/13/04), 893 So.2d 7, 16 ; State v. Thompson , 02-0333 (La. 4/9/03), 842 So.2d 330, 338 ; State v. Diaz , 46,750 (La. App. 2 Cir. 12/14/11), 81 So.3d 228, 230. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore, is given broad discretion in sentencing. State v. York , 48,230 (La. App. 2 Cir. 8/7/13), 121 So.3d 1226, 1241, writ denied , 13-2154 (La. 3/21/14), 135 So.3d 617 (citing State v. Cook , 95-2784 (La. 5/31/96), 674 So.2d 957 ). We acknowledge that maximum sentences are generally reserved for the most serious violations and the worst offenders. State v. Farhood , 02-490 (La. App. 5 Cir. 3/25/03), 844 So.2d 217, 225 ; State v. Martinez , 09-1057 (La. App. 5 Cir. 5/25/10); 40 So.3d 1113, 1116. However, on review, an *761 appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra ; State v. Free , 46,894 (La. App. 2 Cir. 1/25/12), 86 So.3d 29, 31.
Upon review of the entirety of the record in this case, we find that the trial judge did not abuse his discretion in sentencing defendant to the statutory maximum twenty-year sentence under La. R.S. 15:529.1. As stated above, defendant's two predicate convictions are designated crimes of violence under La. R.S. 14:2. The record also reflects that the State discussed on the record its ability to charge defendant with a "quad bill." Further, the evidence presented at trial in this case reflects that defendant used physical force to strangle and beat his eighty-four-year-old mother on at least one occasion. The video recordings and testimony from next-door neighbor Ms. Sullivan further indicate that defendant had a pattern of screaming at Ms. Deubler, causing neighbors to frequently report such disturbances to the police.
In addition, Ms. Deubler reported to Officer Meyers that defendant had previously stepped on her chest and pushed her off of a toilet, prior to the incident where she alleged he strangled her with her shirt collar, struck her with a small bat, and threatened her with a knife. The photographs introduced into evidence further support a pattern of abuse, reflecting bruises all over Ms. Deubler's body with some appearing fresh and others in the process of healing.
Moreover, the record as a whole does not reflect that defendant showed any remorse for his actions. Although his letter to Ms. Deubler apologized for what he had "done," the letter also intended to coerce Ms. Deubler to recall her report to police-asking Ms. Deubler to speak to the district attorney to ask him to drop the charges against defendant, and further pleading with Ms. Deubler that his life, essentially, is in her hands.
Under the facts of this case, we cannot say that the trial judge abused his discretion in imposing the enhanced twenty-year sentence under La. R.S. 15:529.1(A)(3).
ERRORS PATENT
This Court has reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920, State v. Oliveaux , 312 So.2d 337 (La. 1975), and State v. Weiland , 556 So.2d 175 (La. App. 5 Cir. 1990). The record reflects the following errors patent:
Statutory Restrictions
Although defendant was sentenced within the sentencing range under La. R.S. 15:529.1, the record reflects an error favorable to defendant that needs to be corrected with regard to the restriction of parole eligibility. Defendant's conviction is for cruelty to the infirmed in violation of La. R.S. 14:93.3. The penalty provision for the crime of cruelty to the infirmed provides that the offender shall be fined not more than ten thousand dollars or imprisoned with or without hard labor for not more than ten years, or both. La. R.S. 14:93.3, prior to 2010, did not provide for any parole restrictions. In Acts 2010, No. 831 § 1, effective August 15, 2010, the legislature amended the penalty provisions for La. R.S. 14:93.3 to add that, "[a]t least one year of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence when the act of cruelty to the infirmed was intentional and malicious." (emphasis added). Therefore, a restriction on parole eligibility is not provided nor mandatory in the statute unless there is a finding that the offense was intentional and malicious.
For defendant's conviction for cruelty to the infirmed in violation of *762 La. R.S. 14:93.3, the trial judge sentenced defendant to seven years at hard labor, without any restriction on parole eligibility.[16] However, when he sentenced defendant as a third felony offender under La. R.S. 15:529.1, the trial judge sentenced defendant to twenty years imprisonment, without benefit of probation, parole, or suspension of sentence for the entire twenty-year sentence.
While La. R.S. 15:529.1(G) requires all multiple offender sentences to be served without the benefit of probation or suspension of sentence, the multiple offender statute does not impose a parole restriction. Rather, the restrictions imposed on parole eligibility in multiple offender sentences under La. R.S. 15:529.1"are those called for in the reference statute." State v. Esteen , 01-879 (La. App. 5 Cir. 5/15/02), 821 So.2d 60, 79, writ denied , 02-1540 (La. 12/13/02), 831 So.2d 983. Because defendant's underlying conviction for cruelty to the infirmed does not mandate a parole restriction, the trial judge erred in restricting parole eligibility when sentencing defendant as a multiple offender under La. R.S. 15:529.1.[17]
Accordingly, we amend defendant's sentence to remove the restriction on parole eligibility. Further, we order the Clerk of Court for the 24th Judicial District Court to transmit notice of this amended sentence to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department.
Commitment
The uniform commitment order (UCO) for defendant's multiple offender adjudication reflects that defendant was adjudicated a third felony offender on November 28, 2016, which was the date defendant was convicted for his underlying cruelty to the infirmed charge. Accordingly, we remand this matter to the trial court to correct the date on defendant's UCO to reflect the correct date of his multiple offender adjudication. The Clerk of Court for the 24th Judicial District Court is ordered to transmit the corrected UCO to the appropriate authorities under La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. See State v. Long , 12-184 (La. App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142.
Post-Conviction Advisal
The record reflects that defendant received an incomplete advisal of the time period within which he may seek post-conviction relief. It is well settled that if a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Neely , 08-707 (La. App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied , 09- 0248 (La. 10/30/09), 21 So.3d 272 ; State v. Davenport , 08-463 (La. App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied , 09-0158 (La. 10/16/09), 19 So.3d 473 ; State v. Jacobs , 07-887 (La. App. 5 Cir. 5/24/11), 67 So.3d 535, 600, writ denied , 11-1753 (La. 2/10/12), 80 So.3d 468, *763 cert. den. 568 U.S. 838, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012).
Accordingly, we hereby advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. See also State v. Pham , 12-635 (La. App. 5 Cir. 05/16/13), 119 So.3d 202, 227-28, writ denied , 13-1398 (La. 12/6/13), 129 So.3d 531.
DECREE
Accordingly, for the reasons provided herein, defendant's conviction is affirmed. We hereby amend defendant's twenty-year sentence under La. R.S. 15:529.1 to remove the restriction on parole eligibility and, as amended, we affirm.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED FOR CORRECTION OF COMMITTMENT

La. R.S. 14:93.3 was amended in 2014 to change the title of the offense to "Cruelty to persons with infirmities."

The trial court heard the testimony of the alleged victim and found probable cause to hold defendant.

Prior to the start of trial, the State amended the bill of information to reflect a date range in May 2014, and the defendant pled not guilty to the amended bill. The State also nolle prossed a misdemeanor charge of aggravated assault pending against defendant in case no. 14-3525.

This Court has previously held that when the trial judge states that the defendant is sentenced to the "Department of Corrections," the sentence is necessarily at hard labor. State v. Jamison , 17-49 (La. App. 5 Cir. 5/17/17), 222 So.3d 908, 909 n.2.

In the recorded statements, Officer Meyers identified himself as Officer Eric Ross. Officer Meyers testified that he changed his last name since the time of the recordings.

Ms. Deubler advised that she did not take defendant seriously and thought he was only trying to scare her.

They also discovered a curtain rod positioned in the rear sliding door which forced the door into a closed position.

At trial, Officer Meyers denied finding a knife, a shirt with ripped buttons, or a small baseball bat at the house. However, Officer Meyers further explained that the officers did not obtain a search warrant for the house and admitted that the officers did not search for those items inside the house.

In the letter, defendant pleaded with Ms. Deubler to write him back and advised her of how to address her return envelope to him "for his safety." With this advice, he included his CCN number and his location in the Jefferson Parish Correctional Center. The parties stipulated that defendant's CCN number and his location in the Jefferson Parish Correctional Center on July 31, 2014, matched those provided in the letter.

The transcript from the December 17, 2015 hearing to perpetuate Ms. Deubler's testimony was introduced into evidence.

These recordings were the subject of the State's motion to use 404(B) evidence, which the trial judge granted.

Ms. Sullivan stated that other neighbors had called the police to report the situation but that nothing ever happened when the police arrived.

When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold , 603 So.2d 731, 734 (La. 1992) ; State v. Stipe , 14-476 (La. App. 5 Cir. 02/11/15), 167 So.3d 942, 949. Defendant's pro se assignments of error challenge the credibility of the witnesses' trial testimony and the sufficiency of the evidence presented against him at trial.

Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. La. R.S. 14:12.

Although, in his pro se brief, defendant argues that the Ochsner medical records were inadmissible hearsay evidence, the record reflects that the medical records were admitted pursuant to a stipulation by the State and the defense.

The trial judge's oral reasons for his judgment do not reflect that he made any finding as to whether he found defendant's conduct to be intentional and malicious.

As stated above, had the trial judge determined that defendant acted intentionally and with malice in committing the offense, then a restriction on parole eligibility would have been permitted. However, because the record does not support that the trial judge made such a determination, particularly given that defendant's original seven-year sentence did not include such a restriction, we find that the parole eligibility restriction under La. R.S. 15:529.1 is not proper under the facts of this case.