STATE OF LOUISIANA

VERSUS

MIGUEL A. RAMIREZ

NO. 22-KA-92

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-5947, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

November 02, 2022

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Robert A. Chaisson,
Stephen J. Windhorst, and John J. Molaison, Jr.

**AFFIRMED**
    **JJM**
    **RAC**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Paul D. Connick, Jr.
    Thomas J. Butler
    Anne M. Wallis

COUNSEL FOR DEFENDANT/APPELLANT,
MIGUEL A. RAMIREZ
    Prentice L. White

**MOLAISON, J.**

The defendant/appellant in this criminal matter, Miguel Ramirez, seeks review of his sentences on the basis of constitutional excessiveness. For the reasons that follow, we affirm.

## PROCEDURAL HISTORY

On January 23, 2020, the Jefferson Parish District Attorney's Office filed a bill of information charging the defendant with one count of unauthorized entry of an inhabited dwelling where a person was present, with the intent to use force or violence upon the person of another or to vandalize, deface, or damage the property of another, [1] (count 1); one count of cruelty to the infirm[2] upon Allen Bourgeois (count 2), and; battery of Kristen White with a person 13 years or younger present[3] (count 3). The defendant pled not guilty to all charges at his arraignment on February 13, 2020. He proceeded to a jury trial on July 20, 2021, at the conclusion of which he was found guilty of unauthorized entry of an inhabited dwelling as to count 1, and guilty as charged on counts 2 and 3.

On October 25, 2021, the trial court denied the defendant's motion for a new trial. On that same date, the defendant was sentenced to concurrent six-year sentences on counts 1 and 2, with the first year for count 2 to be served without the benefit of parole, probation, or suspension of sentence. For count 3, the defendant received a three-year sentence that ran concurrently with his other sentences. On October 29, 2021, the defendant filed a motion for reconsideration of sentence. On November 30, 2021, the trial court granted the defendant's motion for appeal. The defendant' motion for reconsideration of sentence was later denied on February 18, 2022.[4]

---

[1] This charge is a violation of La. R.S. 14:62.8.
[2] This charge is a violation of La. R.S. 14:93.3.
[3] This charge is a violation of La. R.S. 14:35.3I.
[4] Although the motion was considered after the motion for appeal had been granted, the jurisdiction to do so is recognized in La. C.Cr.P. art. 916(3).

**FACTS**

The testimony at trial established that on the evening of October 6, 2019, the defendant and the mother of his three children, Ms. White, were returning from a trip to Texas when they stopped to watch drag races in New Orleans east. While there, the defendant punched Ms. White in the face after an argument.[5] Eventually, the defendant and Ms. White proceeded to the home of her grandmother, Gwen Bourgeois, and her husband Allen Bourgeois,[6] who lived in the Bridge City area of Jefferson Parish. Mrs. and Mr. Bourgeois routinely took care of Ms. White's and the defendant's children. Between 10:30 and 11:00 p.m., the defendant and Ms. White arrived at the Bridge City residence, waking up Mrs. and Mr. Bourgeois. While the defendant carried out one child to his car, Ms. White told Mrs. and Mr. Bourgeois that the defendant had punched her earlier in the evening and had also physically assaulted her during their stay in Texas. Ms. White showed them an injury she had sustained in her mouth. Mr. Bourgeois then placed a 9-1-1 call to police and relayed what Ms. White had told him.[7]

While the phone call to police was made, the defendant waited outside in the car. Mrs. Bourgeois told the defendant to move his car as he was no longer welcome in her home. The defendant called Mr. Bourgeois to say the he wanted to get the rest of his children from the home, and Mr. Bourgeois responded that he could not do so until the police arrived. Mr. Bourgeois testified that he next heard Mrs. Bourgeois screaming that the defendant was in the house and he had pushed her to the floor. Mr. Bourgeois then armed himself with a shotgun from his closet and loaded it with a single shell before confronting the defendant in the hall and

---

[5] Although the defendant apparently was never prosecuted in Orleans Parish for the attack on Ms. White, the record shows that a warrant was issued for his arrest in connection with the October 6, 2019 incident.

[6] Gwen Bourgeois was Ms. White's biological grandmother, but Mr. Bourgeois was only related by his marriage. Ms. White said that she considered both Mrs. and Mr. Bourgeois to be her grandparents.

[7] The 9-1-1 call, which was authenticated by JPSO, was entered into evidence and played for the jury.

telling him to leave. The defendant grabbed the gun and threw it down, then hit Mr. Bourgeois in the face with what Mr. Bourgeois believed was something from the defendant's pocket. Mr. Bourgeois stated he was knocked unconscious for a short time and that, when he awoke, the defendant was on his back, repeatedly beating him. Mr. Bourgeois estimated that the defendant hit him "over 20 times." He saw Ms. White's daughter holding on to her mother's leg and the daughter was very afraid.[8] After getting off of Mr. Bourgeois, the defendant grabbed Ms. White and went toward the door. Mr. Bourgeois got up, retrieved his gun and followed outside, where he saw the defendant throwing his daughter into the car and pushing Ms. White before closing the door of his vehicle. At that time, Mr. Bourgeois told the defendant not to leave and, when the defendant proceeded to go, Mr. Bourgeois shot at him because he feared that the defendant would kill Ms. White and the children. Following that, Mr. Bourgeois went back to lay down in the hallway until police arrived. Mr. Bourgeois identified the defendant in court as the person who beat him inside of his home.

Mr. Bourgeois was brought to the hospital and treated for multiple injuries that included a "facial contusion, close fracture of a nasal bone," and a lumbar strain. He authenticated photos that were taken of his injuries, which were entered into evidence. Mr. Bourgeois testified that he was 66-years-old at the time the defendant attacked him.[9]

At trial, Jefferson Parish Sheriff's Office ("JPSO") Deputy Mark Giammaria testified that he responded to a 9-1-1 call regarding a complaint of domestic abuse on October 6, 2019, in the Bridge City area of Jefferson Parish. Upon arriving on

---

[8] While the attack ensued, Mrs. Bourgeois placed a 9-1-1 call to police. The call was authenticated by JPSO and introduced into evidence.

[9] La. R.S. 14:93.3(C) provides:
   For the purposes of this Section, a person who is aged is any individual sixty years of age or older.

the scene, Deputy Giammaria was advised by dispatch that someone had been shot. He proceeded into the residence on 15th Street and encountered two people in the home, Mrs. Bourgeois and her husband, Mr. Bourgeois, who was lying on the ground in the hallway and was "bleeding significantly." Deputy Giammaria observed that Mr. Bourgeois had a "significant" laceration to his head, a swollen and bruised eye, a "disfigured" nose, a cut on his arm, and a contusion on the back of his head. Deputy Giammaria described Mrs. Bourgeois as being "[a]nxious, in pain, scared" and "upset." Both Mrs. and Mr. Bourgeois identified the person who had caused the injuries as "Miguel."

After driving away from the Bourgeois' house, the defendant became aware of the gunshot wound to his leg and he proceeded to a friend's house in Kenner to get advice on whether he should go to a hospital. When the friend was not home, Ms. White convinced the defendant to go to Ochsner Hospital in Kenner for the treatment of his injury.

While at the hospital, Ms. White was interviewed by Sergeant Sean Williams of the JPSO Criminal Investigation Unit who was the lead investigator for this case. Williams' summary of the interview recounts that Ms. White told him that she refused to leave New Orleans east with the defendant but that he hit her in the face then dragged her to his car against her will. After arriving at her grandparents' house, she asked them to call the police. The defendant then entered the home without permission and attacked Mr. Bourgeois. Ms. White stated that the attack was so violent that she told Mr. Bourgeois to get a gun to defend himself, which he did. The defendant grabbed Ms. White while she was holding their daughter and dragged her outside of the house. The defendant then forced Ms. White into the back seat of the car against her will. At the time of her interview with Sergeant Williams, Ms. White expressed her intent to pursue simple kidnapping and domestic abuse battery charges against the defendant. Sergeant

Williams testified at trial that at the time of his interview with Ms. White in the hospital, he saw that she had scratches and scrapes, and a mark on her right arm. He also documented an injury to her lip.

Ms. White's testimony at trial, in many respects, contradicted the account she gave to her grandparents and to police. Ms. White indicated during her testimony that she still lived with the defendant and had traveled to the trial with him. She also stated that the defendant had full custody of their children at the time of the incident because of her heroin addiction. In relevant parts, Ms. White asserted that she had provoked the physical assault by the defendant in New Orleans east and had voluntarily left with the defendant after he punched her. She said that she lied to her grandparents about the defendant physically abusing her. Ms. White testified that she changed the facts she told to police because she did not want for Mr. Bourgeois to get into any trouble for shooting the defendant. Ms. White claimed that the defendant did not physically force her to leave the Bourgeois' house on the night of the assault, but that she wanted to leave there. Ms. White also testified as a defense witness that Mr. Bourgeois had twice previously threatened to kill the defendant and that Mr. Bourgeois frequently used racial slurs in referring to the defendant.

At trial, the defendant admitted to punching Ms. White in the face while in New Orleans East during an argument, but claimed that she voluntarily went to her grandparents' home after that to pick up their children. He claimed that he had initially entered the Bridge City residence with permission, but was yelled at by Mrs. Bourgeois to leave the driveway. After waiting in his car for Ms. White, the defendant called Mr. Bourgeois about leaving with his daughter. After Mr. Bourgeois refused, the defendant went back inside and was met by Mrs. Bourgeois, who stood in front of him arguing while he walked down the hallway. The defendant stated that as he made his way into the bedroom where his daughter was,

Mrs. Bourgeois fell down and began screaming that the defendant had pushed her. He saw Mr. Bourgeois go to the closet and pull out a gun, after which he confronted the defendant and said he would kill him. The defendant claimed that Mr. Bourgeois hit the defendant with the gun and the two began struggling while falling to the floor in the hallway. He testified that he hit Mr. Bourgeois approximately six times, but then stopped. He acknowledged his belief at trial that his violence toward Mr. Bourgeois had gone too far. He then got Ms. White, who left willingly, and his daughter, placing them both in his car. As the defendant got into the car, he heard a gunshot and saw Mr. Bourgeois about 10 feet away. Similar to Ms. White's testimony, the defendant asserted that he believed in the past that Mr. Bourgeois would kill him, and also that Mr. Bourgeois had used racial slurs against him.

After being shot, the defendant first thought about going to a friend's house because he did not want to become involved with the police. However, Ms. White convinced him to go to the hospital where he was treated. After he was discharged from the hospital, a deputy brought the defendant to the detective bureau to give a statement.

## ASSIGNMENT OF ERROR

The six-year sentence[10] imposed by the district court in this case was constitutionally excessive in light of his absence of a prior criminal history and the facts of the case.

## LAW AND ANALYSIS

The Eighth Amendment to the U.S. Constitution and Article I, §20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v.*

---

[10] In his motion for reconsideration of sentence, the defendant did not specifically challenge the sentence imposed for each count, but argued that the trial court should instead re-sentence him to "eighteen months at hard labor on each count to run concurrent." On appeal, the defendant does not identify which six-year sentence he contends is excessive. Accordingly, we will review the sentences for both counts 1 and 2, for which the six-year concurrent sentences were imposed.

*Nguyen*, 06-969 (La. App. 5 Cir. 4/24/07), 958 So.2d 61, 64, *writ denied*, 07-1161 (La. 12/7/07), 969 So.2d 628. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. *Nguyen*, 958 So.2d at 64. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the sense of justice. *State v. Taylor*, 06-839 (La. App. 5 Cir. 3/13/07), 956 So.2d 25, 27, *writ denied*, 06-0859 (La. 6/15/07), 958 So.2d 1179 (*citing State v. Lobato*, 603 So.2d 739, 751 (La. 1992); *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 655-56).

In the instant case, the trial judge indicated at sentencing on October 25, 2021, that he remembered the details of the defendant's trial. Specifically, the judge recalled the brutality of the defendant's attack and the injuries that Mr. Bourgeois sustained. He also recounted the defendant's admission that he "got carried away." The judge stated that he was bound by guidelines of La. C.Cr.P. art. 894.1 to impose imprisonment under certain circumstances, and found that the following criteria were met: there was an undue risk that during the period of the suspended sentence or probation that the defendant would commit another crime; the defendant was in need of a correctional treatment or custodial environment that could be provided most effectively by the commitment to an institution, and any lesser sentence would deprecate the seriousness of the offense. The trial judge also made clear on the record his impression that the defendant's conduct during the commission of the offenses manifested deliberate cruelty to Mr. Bourgeois and that the defendant knowingly created a risk of death or great bodily harm to more than one person by his actions.

The possible sentence for the defendant's conviction on count 1 was a fine of not more than one thousand dollars, or imprisonment with or without hard labor for not more than six years, or both. For his conviction on count 2, the potential sentence was a fine of not more than ten thousand dollars or imprisonment with or without hard labor for not more than ten years, or both, with at least one year of the sentence imposed served without benefit of parole, probation, or suspension of sentence when the court finds that the act of cruelty to persons was intentional and malicious. Accordingly, while the defendant's sentence on count 1 was the maximum amount of jail time, his sentence for count 2 was a little over half of the maximum sentence that could have been imposed. Thus, both sentences were within the statutory limits. The trial court did not impose a fine upon the defendant for either count. In addition, it was within the trial judge's purview to sentence the defendant to consecutive sentences, but he did not do so.

The trial court is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. In reviewing a trial court's sentencing discretion, three factors are considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. However, there is no requirement that specific matters be given any particular weight at sentencing. *State v. Tracy*, 02-0227 (La. App. 5 Cir. 10/29/02), 831 So.2d 503, 516, *writ denied*, 02-2900 (La. 4/4/03), 840 So.2d 1213. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Free*, 46,894 (La. App. 2 Cir. 1/25/12), 86 So.3d 29, 31. The appellate court should not set aside a sentence for excessiveness if the record supports the sentence imposed. *State v. Pearson*, 07-332, 07-333, 07-539 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656.

In *State v. Bradley*, 12-79 (La. App. 5 Cir. 9/11/12), 101 So.3d 986, 993-94, this Court reviewed a defendant's conviction for unauthorized entry of an inhabited dwelling, who received six years' imprisonment at hard labor, in light of his claim that the sentence was constitutionally excessive. In that case, where we affirmed the sentence, we undertook a survey of similar cases and noted the following, which is also relevant to the instant matter:

> In *State v. Jupiter*, 06-93 (La.App. 5 Cir. 6/28/06), 934 So.2d 884, defendant kicked in the door of his girlfriend's apartment, entered it without her permission, struck her, and then fled. He was convicted of unauthorized entry of an inhabited dwelling, among other things, and sentenced to six years imprisonment at hard labor. On appeal, defendant contended that he was not the most egregious of offenders, and that this incident involved a family argument that escalated. This Court upheld the sentence, noting that defendant was charged with numerous other crimes in connection with this case.

> Likewise, in *State v. Williams*, 32,993 (La.App. 2 Cir. 3/1/00), 754 So.2d 418, cited approvingly by this Court in *Jupiter*, defendant went to his girlfriend's apartment, kicked the door in, entered, and physically restrained his girlfriend. The Second Circuit found that sentencing defendant to five years at hard labor for unauthorized entry of an inhabited dwelling was not constitutionally excessive, noting that the trial court concluded that defendant was in need of correctional treatment and a lesser sentence would deprecate the seriousness of the offense.

> Also, in *State v. Butler*, 06-645 (La.App. 5 Cir. 12/27/06), 948 So.2d 296, this Court upheld a five-year hard labor sentence for a defendant who was convicted of unauthorized entry of an inhabited dwelling, noting that defendant entered his girlfriend's home despite a restraining order and without her authorization, confronted her with a knife, and left only because she called the police. This Court further noted that the restraining order and supporting documents showed that the defendant had a propensity toward violence to the victim, and that defendant had a similar conviction in another state.

With regard to count 2, our review of sentences for similar crimes shows that the defendant actually received a lesser sentence than those in some reported cases. For example, in *State v. Echeverria*, 02-2592 (La. App. 1 Cir. 6/27/03), 858 So.2d 632, 636, *writ denied sub nom. State ex rel. Echeverria v. State*, 03-2332 (La. 8/20/04), 882 So.2d 580, the defendant received a seven-year sentence after shoving his 84-year-old grandmother into kitchen furniture with both hands,

thereby causing her unjustifiable pain and bruises. In *State v. Deubler*, 17-334 (La. App. 5 Cir. 12/27/17), 236 So.3d 752, 758, *writ denied*, 18-0457 (La. 1/8/19), 259 So.3d 1025, the defendant was convicted of attacking his 84-year-old mother. She reported to police that her son had "roughed [her] up," hit her with a small baseball bat, strangled her with her own shirt collar, and threatened to use a knife "on" her. In that case the defendant was given a seven-year sentence, which was later enhanced under a multiple offender bill, which we affirmed.

In the instant matter the record reflects that on October 6, 2019, the defendant first committed a battery upon Ms. White by punching her in the face. For that assault, a warrant was issued for the defendant's arrest for domestic abuse battery and simple kidnapping although it does not appear that he was prosecuted for these crimes. Later that same evening, as evidenced in the second 9-1-1 call entered into evidence, the defendant re-entered the Bourgeois' home without permission and injured Mrs. Bourgeois' hand while she attempted to get the defendant to leave. When calling police Mrs. Bourgeois reported that she was on the floor and could not get back up.[11] Mr. Bourgeois testified at trial that the defendant knocked him unconscious before beating him repeatedly, causing numerous injuries, in an act of violence that the defendant admitted had gone too far. As initially reported to police, the defendant dragged Ms. White and their four-year-old daughter over the bodies of her grandparents and out of the home before forcing them into his car. After a review of the entire record, the trial court's reasons for judgment, sentences imposed for similar crimes, and the fact that the defendant received only a little over half of the maximum sentence on what was arguably the more serious charge, also taking into account that the defendant received no fines and his sentences were run concurrently, we do not find that the

---

[11] Mrs. Bourgeois did not give a formal statement to police and passed away prior to trial. However, her 9-1-1 call, wherein she described the defendant's attack, was entered into evidence. The defendant was not charged with battery upon Mrs. Bourgeois.

sentences imposed were unconstitutionally excessive. The sentences were not grossly disproportionate to the severity of the offenses, nor do they shock our sense of justice.

## ERROR PATENT REVIEW

In accordance with La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990), we have reviewed the record for errors patent. As correctly pointed out by the defendant, while the minute entry from sentencing indicates that he was advised of the time limitation for filing for post-conviction relief, the transcript does not. When there is a discrepancy between the minute entry or commitment and the transcript, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983); *State v. Pham*, 12-635 (La. App. 5 Cir. 5/16/13), 119 So.3d 202, 227-28.

If a trial court fails to advise pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *State v. Francis*, 17-651 (La. App. 5 Cir. 5/16/18), 247 So.3d 199, 205. Accordingly, we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

We found no additional errors which required correction.

## DECREE

Accordingly, for the foregoing reasons, the defendant's convictions and sentences are affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 2, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-KA-92**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
ANNE M. WALLIS (APPELLEE)         THOMAS J. BUTLER (APPELLEE)         PRENTICE L. WHITE (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053